IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK GLENNON,<br><br>                        Plaintiff,<br><br>v.<br><br>BRANDON JOHNSON, *in his official capacity as Mayor of Chicago*; MELISSA CONYEARS-ERVIN, *in her official capacity as Chicago City Treasurer*; CITY OF CHICAGO; CHARLES SCHMADEKE, SEAN BRANNON, STEPHAN FERRARA, and DIONNE HAYDEN, *in their official capacity as Chairman and Members of the Illinois Gaming Board*; BALLY'S CHICAGO INC.; BALLY'S CHICAGO OPERATING COMPANY, LLC; and BALLY'S CORPORATION,<br><br>                        Defendants. | Case No. 1:25-cv-1057<br><br>**Complaint** |

### Introduction

1. The City of Chicago requires companies, as a condition of doing business with the City, to discriminate on the basis of race and sex. Plaintiff attempted to participate in the upcoming IPO for a major casino project in the City but, because of an agreement between the City and the project's owner, was not allowed to purchase shares on an equal basis with other investors because he is a white male.

2. In 2022, the City of Chicago ("City") and Bally's Chicago Operating Company, LLC ("Bally's") entered into a Host Community Agreement ("the Agreement") as a condition of approving Bally's casino project. The agreement requires that Bally's discriminate on the basis of sex and racial classification in all

facets of the casino project, including initial construction, vendor selection, employee recruitment and hiring, Board composition, and ownership of the casino project.

3. The Agreement requires that the casino have 25% minority ownership. To meet that requirement, Bally's has proposed an Initial Public Offering ("IPO") available only to persons or entities who meet the "Qualification Criteria" set by the City. The terms of the IPO require that any purchaser be either a woman or a minority, or a company majority-owned by a woman or a minority, as defined by the City of Chicago's own ordinances.

4. Plaintiff, an Illinois resident who attempted to participate in this IPO but was rebuffed purely on the basis of his race and sex, brings this case in opposition to the explicit race and sex quotas imposed upon this securities offering at the demand of the City of Chicago, which has exploited its approval authority over development projects to impose this Qualification Criteria that excludes Plaintiff from participating in the Bally's IPO. He therefore brings this action to challenge his exclusion from this securities offering on the basis of race and sex.

## Parties

5. Plaintiff Mark Glennon is a resident of Wilmette, Illinois. He attempted to invest in Bally's IPO and meets all other qualifications to invest except that he is a male, and therefore not a woman, nor does he self-identify as a member of the racial groups that the City of Chicago defines as a minority.

6. Defendant City of Chicago is a municipal corporation and home rule unit of local government existing under the Constitution of the State of Illinois.

2

7. Defendant Brandon Johnson is Mayor of the City of Chicago. He is sued in his official capacity.

8. Melissa Conyears-Ervin is Treasurer of the City of Chicago. She is sued in her official capacity.

9. Charles Schmadeke, Sean Brannon, Stephan Ferrara, and Dionne Hayden are the Chairman and Members of the Illinois Gaming Board, who are sued in their official capacity as the public officials responsible for implementing and enforcing the Illinois Gambling Act.

10. Defendant Bally's Chicago Operating Company, LLC, is a Delaware limited liability company and, other than the 25% race and sex quota challenged in this lawsuit, is wholly owned by Defendant Bally's Chicago Inc.

11. Defendant Bally's Chicago Inc. is an indirect subsidiary of defendant Bally's Corporation, an international publicly traded gaming and resorts company that, via these subsidiaries, wishes to build this casino project.

## Jurisdiction and Venue

12. This case raises claims under the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. §§ 1981, 1982, and 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 because the claims arise under federal law and allege violations of Plaintiff's civil rights.

13. Venue is proper because a substantial portion of the events giving rise to the claims occurred in the Northern District of Illinois. 28 U.S.C. § 1391(b)(2).

**Facts**

14. In 2021, the City of Chicago began soliciting proposals to compete for the right to develop the first integrated casino resort in the City in accordance with a 2019 amendment to the Illinois Gambling Act, 230 ILCS 10/1 et seq. authorizing the City to issue a single casino owner's license.[1]

15. An application for an owner's license must contain "evidence the applicant used its best efforts to reach a goal of 25% ownership representation by minority persons and 5% ownership representation by women." 230 ILCS 10/6(a-5)(9).

16. Five bids were received, and three finalists were chosen: The Hard Rock, Rivers, and Bally's. Those three bids were analyzed by the Chicago City Council casino committee (chaired by Aldpeople Thomas Tunney and Jason Ervin), which recommended a selection to then-Mayor Lori Lightfoot, who then chose a bid.[2]

17. In the summer of 2022, Bally's Corporation was ultimately selected by the Mayor to open a casino on the site of the Tribune Publishing Center in the River West neighborhood.

18. While all three bids offered to satisfy the City's requirements that the project discriminate on the basis of race and sex, Bally's won the competition in substantial part because its bid promised the most aggressive use of discrimination to meet the City's demands.

---

[1] CBS News, Lightfoot's Office Unveils Five Bids For A Chicago Casino; Public Meeting on Proposals Set for Dec. 16, November 19, 2021, https://www.cbsnews.com/chicago/news/chicago-casino-proposals-mayor-lori-lightfoot-ballys-hard-rock-rivers-rush-street-gaming/
[2] Hermene Hartman, Casino in Chicago: Here's What You Need to Know About the 3 Proposed Sites, The Triibe, April 28, 2022, https://thetriibe.com/2022/04/casino-in-chicago-here-is-what-you-need-to-know-about-the-3-proposed-sites/

19. The City negotiated a comprehensive Host Community Agreement with Bally's to memorialize the agreed upon terms. This agreement was then evaluated by an Alderman special committee, as well as the entire City Council, before receiving their final approval. The formal development process could not begin until receiving approval from the City Council and approval for a casino license from the Illinois Gaming Board.[3]

20. The City conditioned project approval on the inclusion of various "minority preferences" in the Host Community Agreement.

21. The Agreement, entered into by and between the City of Chicago and Bally's requires discrimination on the basis of sex and racial classification in all facets of the casino project.

22. Agreement Exhibit A-2 outlines the requirements for discriminatory sourcing, with a preference for Minority-owned businesses ("MBE") and Women-owned businesses ("WBE"). This section also contains a requirement to hire a "Diversity, Equity and Inclusion expert in sourcing, monitoring, compliance and contracting MBE, WBE, VBE and BEPD vendors."

23. Agreement Exhibit A-3 outlines the City's requirements for race and sex-based discrimination in workforce recruiting and hiring by Bally's, including that Bally's "will take commercially reasonable efforts to maintain a target goal of hiring 60% Minorities for operation of the Casino[.]"

---

[3] NBC 5 Chicago, Bally's River West Wins Chicago Casino Bid, Here's What We Know and What Happens Next, May 5, 2022, https://www.nbcchicago.com/news/local/ballys-river-west-wins-chicago-casino-bid-heres-what-we-know-and-what-happens-next/2824938/

24. Agreement Exhibit A-9(3) requires that "40% of seats on the Board will be reserved for Minorities, no later than twelve months following commencement of the Term or such later date as may be determined by the City to allow for Illinois Gaming Board approval, which commitment will continue for the life of the agreement."

25. Agreement Exhibit A-9(2) requires that "Developer commits that 25% of the Project equity will be owned by Minority individuals and Minority-Owned and Controlled Businesses no later than twelve months following commencement of the Term or such later date as may be determined by the City, and will continue for no less than five years thereafter. Additionally, Developer shall provide commercially reasonable efforts to locate qualified Minority individuals or Minority-Owned and Controlled Businesses who wish to buy an interest in Developer in an effort to assist any Minority individuals or Minority-Owned and Controlled Businesses who may wish to sell their interest in Developer."

26. Agreement Exhibit A-9 defines the term "Minority" to mean "an individual considered to be a minority pursuant to MCC 2-92-670(n), 'Definitions: Minority,' as it may be amended from time to time, or a 'woman' as defined in the Act. This includes, but is not limited to: African-Americans, Hispanics, Asian-Americans, and American Indians, as defined by that ordinance." "MCC" is the Municipal Code of Chicago—Bally's discriminatory policies are an implementation of the City's policies.

27. The City does not claim to remedy any particular past discrimination through these discriminatory requirements imposed on Bally's through the Agreement.

28. The City cannot and will not remedy any particular past discrimination through these discriminatory requirements imposed on Bally's through the Agreement

29. In order to meet the 25% minority ownership requirement imposed by the HCA, Bally's has registered an IPO of 10,000 shares that it will only sell to investors who meet the "minority" definition imposed by the City through the Agreement.

30. Not only does the IPO limit participation to only those who meet the criteria of being either a minority or a woman, but it also offers subsidized shares to applicants who meet that criteria. Applicants can pay as little as $250 for shares valued at $25,000, with the difference subsidized by a non-recourse loan from Bally's.

31. The application to apply to participate in the IPO explicitly asks applicants to certify whether they meet the "Class A Qualification Criteria," explicitly explains that the criteria discriminate on the basis of race and that Bally's is discriminating on the basis of race "pursuant to the Host Community Agreement as agreed with the City of Chicago." adding that "[t]hose who do not meet the

Qualification Criteria cannot purchase shares."

**CLASS A QUALIFICATION CRITERIA**

For an individual, *"Class A Qualification Criteria"* means an individual that shall:

- be a Minority or a woman;
- not be an official, employee, or a family member of an official or employee of the City of Chicago
- not have been convicted of a felony under the laws of any jurisdiction, including the United States or any state;
- not have been convicted of illegal gambling under any statute in any jurisdiction, including Article 28 of the Illinois Criminal Code of 1961 and Article 28 the Illinois Criminal Code of 2012 or any other similar statutes in any jurisdiction;
- not be a member of the Illinois Gaming Board;
- not have had a license to operate gambling facilities in any jurisdiction revoked or suspended;
- not have knowledge of any facts or circumstances that would be disqualifying under the Illinois Gambling Act;
- not be an individual whose background, reputation and associations would dishonor or harm the reputation of, or result in adverse publicity for, Bally's Corporation, Bally's Chicago, Inc., the City of Chicago, the State of Illinois or the gaming industry in Illinois;
- consent to undergo a background check; and
- have submitted a qualification application to Bally's Chicago, Inc.

I have read the above definition of "Class A Qualification", pursuant to the Host Community Agreement as agreed with the City of Chicago, and certify that either (check one)

clear selection

◯ Yes, I satisfy the criteria

🔴 No, I do not satisfy the criteria

This offering is only available to entities who satisfy the **Class A Qualification Criteria** in accordance with the Host Community Agreement with the City of Chicago

32. On January 24, 2025, Plaintiff Mark Glennon applied to participate in the Bally's IPO and was not allowed to even submit a offer for these shares because he is not a minority or a woman. See image of rejection reproduced above.

## COUNT I

**The minority ownership requirement forced on Bally's by the City of Chicago discriminates on the basis of race in violation of the Fourteenth Amendment and 42 U.S.C. §§ 1981 and 1983.**

33. The allegations contained in all preceding paragraphs are incorporated herein by reference.

34. "The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination. The typical equal protection case

8

involves discrimination by race, national origin or sex." *Swanson v. City of Chetek*, 719 F.3d 780, 783 (7th Cir. 2013).

35. The Fourteenth Amendment prohibits municipalities from discriminating on the basis of race or ethnicity. *See McNamara v. City of Chi.*, 959 F. Supp. 870, 872 (N.D. Ill. 1997).

36. Defendants, acting under color of law, deprive Plaintiff of his Fourteenth Amendment right against discrimination on the basis of race and ethnicity by requiring the Bally's IPO to be limited to women or minorities. The requirements of the Host Community Agreement operate to exclude white males from ownership participation in the only casino project in the City.

37. In implementing the Host Community Agreement, required by the City of Chicago as a condition of approving this casino project, thereby depriving Plaintiff of his Fourteenth Amendment rights, Defendants, and their agents, are acting under color of state law. The definition of "minority" is set by the Municipal Code of Chicago, MCC 2-92-670 (n), and the definition of "woman" is determined by MCC 2-92-680(v). The City of Chicago requires that Bally's enforce the discriminatory provisions of the Agreement under threat of severe monetary penalty.

38. "When the government distributes burdens or benefits on the basis of individual racial classifications, that action is reviewed under strict scrutiny." *Parents Involved in Community Schools v. Seattle School District No. 1*, 551 U.S. 701, 719 (2007).

9

39. When the government creates race-based policies, it must only do so "informed by data that suggest intentional discrimination." *Vitolo v. Guzman*, Nos. 21-5517/5528, slip op. at 9 (6th Cir. May 27, 2021). Broad disparities "are not nearly enough." *Id.*

40. A history of social disadvantage for one or more groups does not justify resort to racial classification. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500-501 (1989).

41. Creating new forms of discrimination to remedy old ones is not a solution to past racism. Rather, "[t]he way to stop discrimination on the basis of race is to stop discriminating on the basis of race." *Parents Involved,* 551 U.S. at 748.

42. The Host Community Agreement includes an invidious racial classification that discriminates against applicant investors on the basis of race.

43. Defendants do not have any compelling government interest in Defendant discriminating among potential investors on the basis of their race. Defendants have not established that the program is narrowly tailored to target a specific episode of past or present discrimination. The program as administered allowed affluent minority or female individuals to invest while excluding low-income white males.

44. There is no important government interest in the racial classification contained in the Host Community Agreement.

45. The racial classification in the Host Community Agreement is not substantially related to any government interest.

46. The discriminatory regime imposed on Bally's by the City of Chicago cannot withstand constitutional scrutiny.

47. "Racial classifications are antithetical to the Fourteenth Amendment, whose 'central purpose' was 'to eliminate racial discrimination emanating from official sources in the States.'" *Shaw v. Hunt*, 517 U.S. 899, 907 (1996) (quoting *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964)). "Distinctions between citizens solely because of their ancestry are by their very nature odious to a free people." *Rice v. Cayetano,* 528 U.S. 495, 517 (2000) (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943)).

48. Plaintiff Mark Glennon has been denied participation in Bally's IPO because he is a white male; if he were a member of a "minority" racial group he would qualify for participation. "Consistency *does* recognize that any individual suffers an injury when he or she is disadvantaged by the government because of his or her race, whatever that race may be." *Adarand Constructors v. Pena*, 515 U.S. 200, 230 (1995).

49. Plaintiff Mark Glennon is entitled to declaratory and injunctive relief against defendants for the violation of his Fourteenth Amendment right to equal protection.

## COUNT II

**The minority ownership requirement forced on Bally's by the City of Chicago discriminates on the basis of sex in violation of the Fourteenth Amendment 42 U.S.C. §§ 1981 and 1983.**

50. The allegations contained in all preceding paragraphs are incorporated herein by reference.

51. The Supreme Court has said that "for cases of official classification based on gender," "the reviewing court must determine whether the proffered justification is "exceedingly persuasive."" *United States v. Virginia*, 518 U.S. 515, 532-33 (1996).

52. "The State must show 'at least that the [challenged] classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Id.* (citations omitted). "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Id.*

53. Defendants cannot demonstrate that discriminating on the basis of sex in ownership preference for this casino project is substantially related to achieving an important governmental interest.

54. MCC 2-92-680(v) defines "woman" as "a person of the female gender, who is presumed to be socially disadvantaged." This is an overbroad generalization about the capacities of males and females.

55. Defendants cannot show an "exceedingly persuasive justification" for excluding men, operatively only white men, from the Bally's IPO. The appropriate

12

remedy must "provide equal opportunity." See *United States v. Virginia*, 518 U.S. at 534.

56. Coupled with the racial discrimination required by the Host Community Agreement, the sex-based discrimination requirement singles out only white men to be excluded from participation in Bally's IPO. Bally's is the only casino project in Chicago.

57. Defendants cannot demonstrate that excluding only white men from ownership is substantially related to achieving an important government interest.

58. The Qualification Criteria imposed by the City allow affluent white women to participate in Bally's IPO while excluding low-income white men; there is no important government interest in bringing about this state of affairs.

59. Plaintiff is entitled to declaratory and injunctive relief against defendants for the violation of his Fourteenth Amendment right to equal protection.

## COUNT III

**The minority ownership requirement forced on Bally's by the City of Chicago interferes with Plaintiff's equal right to purchase, hold, and convey property in violation of 42 U.S.C. § 1982.**

60. The allegations contained in all preceding paragraphs are incorporated herein by reference.

61. "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

62. Personal property is "[a]ny movable or intangible thing that is subject to ownership and not classified as real property." Black's Law Dictionary, Personal Property (11th ed. 2019) (defined under "property"). Real property is "either corporeal (soil and buildings) or incorporeal (easements)." Black's Law Dictionary, Real Property (11th ed. 2019) (defined under "property").

63. The shares offered for sale in the Bally's IPO are intangible, subject to ownership, and not classified as real property. They are therefore "personal property" within the meaning of § 1982.

64. Defendants have excluded Plaintiff from participation in the Bally's offering on the basis of his race, interfering with Plaintiff's right to purchase, hold, and convey shares in the Bally's IPO, in violation of § 1982.

65. Plaintiff is entitled to nominal damages, compensatory damages, and punitive damages. "[T]here is no limit on the amount of punitive damages that can be awarded under 42 U.S.C. § 1982." *Phillips v. Hunter Trails Cmty. Asso.*, 685 F.2d 184, 191 (7th Cir. 1982).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

    A. Enjoin the implementation of the provisions of the Host Community Agreement between Bally's Chicago and the City of Chicago that require race and or sex-based discrimination in violation of the Fourteenth Amendment;

B. Enjoin Defendants from excluding otherwise qualified individuals from participating in Bally's ownership, Board or employment on the basis of sex or racial classifications;

C. Enjoin Defendant City of Chicago from entering into similarly discriminatory quid pro quo casino development agreements under 230 ILCS 10/6(a-5)(9).

D. Award Plaintiffs their reasonable costs, expenses, and attorneys' fees pursuant to any applicable law; and

E. Award Plaintiffs any additional relief the Court deems just and proper.

Dated: January 30, 2025

Respectfully submitted,

Mark Glennon

By: <u>Reilly Stephens</u>
One of his Attorneys

Reilly Stephens
Bridget Conlan (IL Bar 6348769)
Liberty Justice Center
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400
rstephens@ljc.org
bconlan@ljc.org